James COLE, Webber McGill, Claudi B. Johnson, Willie Parker, Jr., and Obretee Jackson, as Trustees of the Church of Christ, 1601 East 21st Avenue, Gary, Indiana 46407, Appellants–Plaintiffs,

v.

Brother Robert L. HOLT, Appellee–Defendant,

Gary Church of Christ, Inc., Brother Robert L. Holt, Appellees–Plaintiffs,

v.

James Cole, Webber McGill, Claudi B. Johnson, Willie Parker, Jr., and Obretee Jackson, and all others similarly situated, Appellants–Defendants.

No. 45A05–9907–CV–297.

Court of Appeals of Indiana.

March 16, 2000.

Debra Lynch Dubovich, Levy & Dubovich, Highland, Indiana, Attorney for Appellants.

Robert G. Vann, Merrillville, Indiana, Attorney for Appellee Gary Church of Christ, Inc.

## OPINION

BAKER, Judge.

Appellants James Cole, Webber McGill, Claudi B. Johnson, Willie Parker, Jr. and Obretee Jackson (collectively referred to as "the trustees") appeal the trial court's rulings in favor of appellees Brother Robert L. Holt ("the minister") and Gary Church of Christ, Inc. ("the incorporated church"). Specifically, the trustees argue that the trial court lacked subject-matter jurisdiction to resolve the church property dispute, as any determination would allegedly require improper entanglement into ecclesiastic affairs in violation of the First Amendment to the United States Constitution. In the alternative, the trustees challenge the trial court's finding that the property belongs to the incorporated church.

## FACTS

The dispute in the instant case apparently began in October 1998 when, prior to incorporation of the church and following a vote by the congregation to purchase new property, the trustees sent a notice of termination to the minister. The trustees took such action without providing notice to or obtaining approval from the church congregation, and the minister refused to relinquish his position. On November 3, 1998, the congregation held a meeting where it voted to not recognize the trustees as church leaders and selected new leaders. Thereafter, the trustees, in the name of the unincorporated church, petitioned for a preliminary injunction and permanent restraining order against the minister. However, on November 17, 1998, the trial court granted the minister's motion for judgment on the evidence, finding that the trustees had no authority to bring the suit in the name of the church and that they failed to present any evidence that the minister was a danger to the church's property or congregation. Record at 25–26.

On December 18, 1998, following approval by a majority vote of the congregation, the church became incorporated, as a not-for-profit corporation, under the laws of Indiana. Subsequently, the incorporated church took steps to place the church property, some of which had previously been held in the name of the trustees in their capacity as trustees for the church,[1]

1. The deed, dated April 20, 1976, to the East 21st Avenue property was originally held in

into the name of the corporation by quit-claim deeds, dated March 17, 1999. Further, on December 21, the incorporated church entered into a new service contract with the minister, providing that the minister could only be terminated by a majority vote of the congregation. The by-laws of the incorporated church were ratified by a majority vote on February 21, 1999.

At some point following incorporation, new property, located at 505 East 45th Avenue, was purchased for the church and the property at 1601 East 21st Avenue was used as collateral. Worship began at the new location in February 1999. During February, members of the incorporated church attempted on several occasions to enter the property on East 21st Avenue and remove items of personal property. However, the trustees defeated such attempts by changing the locks and calling the police. Each time, the police refused to allow any removal of property without a court order. R. at 137. The trustees' memberships in the incorporated church were withdrawn on February 14, 1999.

On March 3, 1999, in Lake Superior Court Room Three, the trustees filed a complaint seeking eviction of the minister from the East 21st Avenue property and the parsonage at 555 McKinley Street. The minister filed a motion to produce authority under which the trustees' attorney filed the complaint, on March 18. Further, the incorporated church filed a motion to intervene as a defendant. It is not clear from the record whether such motion was granted.

In another courtroom, Lake Superior Court Room Two, the incorporated church filed a complaint seeking a temporary restraining order, preliminary injunction and permanent injunction against the trustees, on March 29. Aware of the case pending in Court Room Three, the trial court transferred the restraining order cause and ordered the cases consolidated in that courtroom.

On May 13, 1999, the trial court held a hearing on all outstanding matters, including a counterclaim that had apparently been filed by the trustees on the day of the hearing, seeking ownership of the property located at 1601 East 21st Avenue. At the hearing, the trial court dismissed the trustees' claims, finding that they had no authority to bring the claims, and entered a permanent injunction in favor of the incorporated church. On June 8, 1999, the trial court issued its final judgment on all outstanding matters. Specifically, the court found that the trustees did not have authority to bring a claim against the minister or the incorporated church. Further, the court found that the incorporated church is the sole owner of all personal, real or mixed property located at 1601 East 21st Avenue, 505 East 45th Avenue and 555 McKinley Street. Therefore, the trial court dismissed the trustees' complaint and counterclaim and ordered the permanent injunction entered at the May 13 hearing to remain in full force and effect. The trustees now appeal.

## DISCUSSION AND DECISION

### I. Subject–Matter Jurisdiction

The trustees initially claim that the trial court lacked subject-matter jurisdiction to consider the issues in the instant case. They argue that the resolution of the dispute between themselves and the incorporated church involves the court assuming the forbidden role of arbiter of ecclesiastic matters and, thus, violates the First Amendment as applicable to the states through the Fourteenth Amendment.

trust by Booker T. Martin, John M. Davis, Cole, Frederick McKinney and McGill. R. at 190. On December 28, 1998, during the instant dispute, Cole, McGill and Johnson apparently executed a quit claim deed to this property to themselves, and Parker and Jack-son as trustees. R. at 9. The original deed to the property on McKinley Avenue, the parsonage, did not list any individuals as trustees but rather conveyed the property to "Trustees of 21st Avenue Church of Christ." R. at 10.

 Civil courts are precluded from resolving disputes involving church affairs if resolution of the disputes cannot be made without extensive inquiry into religious law and polity. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). However, the courts do not inhibit free exercise of religion merely by opening their doors to disputes involving property, as there are neutral principles of law, developed for use in all property disputes, which can be applied without "establishing" churches to which property is awarded. *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). Therefore, the First Amendment commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine and practice. *Id.*

 Indiana recognizes that in a church of congregational polity, rather than hierarchical polity, we apply the ordinary presumption that, absent some indication to the contrary, the religious organization is represented by a majority of its members. *See Marich v. Kragulac,* 415 N.E.2d 91, 102–03 (Ind.Ct.App.1981) (citing, *Jones v. Wolf,* 443 U.S. 595, 606–10, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) (finding that a state's adoption of a presumptive rule of majority representation is consistent with both the neutral principles analysis and the First Amendment and noting that generally a majority faction can be identified without resolving any questions of religious doctrine)). Thus, when presented with a dispute within a church of congregational polity, our courts will uphold the majority's decision, whether that is to purchase property or even remove the minister, unless the church has established its own decision-making body with the power to override the will of the majority.[2]

 Here, the trial court was not confronted with a controversy over church doctrine or practice, which would necessitate the interpretation of the meaning of church doctrines. *Cf. Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (finding that dispute arose out of controversy concerning church doctrine and Georgia courts impermissibly determined whether actions of general church constituted a "substantial departure" from prior doctrine and whether the issue on which the general church departed held a place of such importance in the traditional theology as to require termination of the trust). Rather, this is simply a case where the trustees in a congregational church found themselves in the minority.

We find that the trustees have not rebutted the presumption of majority rule. Specifically, we note that, prior to incorporation, the trustees sought approval and authority from the congregation to search for and hire the minister. R. at 231. Further, at several meetings, the congregation voted to purchase the property located on 45th Avenue, to not recognize the authority of the trustees to fire the minister, to incorporate and to ratify the subsequent by-laws. Moreover, the by-laws of the incorporated church expressly provide generally for majority vote of the members. R. at 145–46.

The only evidence in the record the trustees could possibly point to to rebut the majority rule presumption is language in the original ministerial service agreement, signed by the minister, four of the trustees, two of the current deacons of the incorporated church and one member who has apparently passed away. This agreement provided that the "Church Delegated Leaders" could collectively terminate the agreement without cause.[3] R. at 177.

**2.** We observe that without such a presumption, there would be chaos when disputes arise within congregational churches, such as can be seen in the instant case, because un- like in hierarchical churches, members would have no avenue to resolve the dispute.

**3.** We note that only four of the "Church Delegated Leaders" signed the termination notice

Further, the agreement began with the following guiding principles: the Church Delegated Leaders are the "only overseers of the Church;" they "are responsible for all of the affairs of the Church, whether be spiritual, functional, or material;" and, "[a]ll ministers serve the congregation under the total oversight of and in partnership with the Church Delegated Leaders to accomplish such purposes and objectives as are set forth in the scriptures." R. at 171. We find it significant that these individuals referred to themselves as "delegated" leaders. Moreover, it is apparent that, despite the language in the contract, such leaders were still answerable to the majority will from which they obtained their authority to enter into the service agreement.

We hold that the presumption of majority rule applies in this case and the identification of the incorporated church as the majority does not require extensive interpretation of ecclesiastical matters. Therefore, the trial court had subject-matter jurisdiction to resolve the church property dispute.

## II. Property Issue

■ The trustees argue in the alternative that the trial court improperly found that the property in question belongs to the incorporated church.[4] Initially, the trustees reason that the minister was properly terminated and, therefore, his

that was sent to the minister.

4. The trustees also make a convoluted argument that the trial court erred by entering judgment on the merits after dismissing their claims. We simply observe that the trial court only dismissed the trustees' eviction complaint and their counterclaim for lack of authority to bring suit. The court then entered judgment on the incorporated church's complaint, in which the trustees were defendants. We fail to see the alleged "'Alice–in–Wonderland, Through–the–Looking–Glass' logic turned upside down." Appellants' Brief at 29. Further, the trustees' argument that the case was prematurely stopped, in violation of their due process rights, is not supported by citation to relevant authority or cogent argument and is thus waived. *See*

subsequent actions were inappropriate, illegal and void. They also assert that the property was conveyed by quitclaim deed to the corporation without their knowledge or consent.

We first observe that the issue of the minister's termination is irrelevant to the property issues in this case. During trial, the court expressed its confusion as to why the termination was relevant as follows:

> I guess I'm missing a point you're making and I don't see how this case raises [sic] and falls on whether not [the minister] is or is not employed. From what I understand from this mornings [sic] evidence, the Church itself, acted and acted as an independent corporation. So, you're making it sound as though [the minister] was the leader, president and (indiscernible) of this and whether he was or not, I don't see where it's relevant or not.

R. at 224. We are similarly perplexed. The actions apparently challenged by the trustees, including the purchase of the new building for church services, the mortgaging of the old building and the incorporation of the church, were all taken with majority approval from the congregation.[5] Further, we note that a majority of the congregation voted to not recognize the trustees' power and, thereafter, the minister was rehired by the incorporated

Ind. Appellate Rule 8.3(A)(7); *Atherton v. State*, 714 N.E.2d 1116, 1120 (Ind.Ct.App. 1999) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

5. To the extent the trustees argue that the votes did not constitute a majority, we decline their invitation to reweigh the evidence. *See Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277, 1279 (Ind.Ct.App.1998) ("On review, we will not reweigh the evidence and will affirm the trial court's decision unless the evidence, when viewed in the light most favorable to the judgment, points incontrovertibly to an opposite conclusion.").

church, subject to removal only by a majority of the members.

With respect to the transfer of the property by quitclaim deed to the corporation, the trustees cite no authority to support their argument that such transfer was illegal or void. Thus, they have waived the issue. *See Atherton,* 714 N.E.2d at 1120. Waiver notwithstanding, we find that the transfer of the property by quit claim deed to the corporation was proper, as at all times, the property was held in trust for the church. Further, the congregation voted to no longer recognize the trustees' power and selected new leaders, one of whom was listed as a trustee on the original deed. These new leaders, members of the Deacon Board, later executed the quitclaim deeds to the corporation. The trial court did not err in finding that the property belonged to the incorporated church and, thus, ordering a permanent injunction against the trustees.

Judgment affirmed.

SULLIVAN, J., and KIRSCH, J., concur.