**Donna SMITH, Lamont Smith, Sandra Smith, Raymond Patterson, and Ora Markey, Appellant–Defendant,**

v.

**EMMANUEL TEMPLE PENTECOSTAL CHURCHES OF THE APOSTOLIC FAITH, INC., Joseph Morst, and Bishop Theroux Barnes, Appellees–Plaintiffs.**

No. 49A02–1007–PL–793.

Court of Appeals of Indiana.

March 23, 2011.

adoption-related matters it addressed.

Chad D. Wuertz, Wuertz Law Office, LLC, Indianapolis, IN, Attorney for Appellants.

Richard N. Boe, A Boe Law Firm, P.S., Indianapolis, IN, Attorney for Appellees.

## OPINION

FRIEDLANDER, Judge.

Donna Smith (Smith) was embroiled in a dispute with Emmanuel Temple Pentecos-tal Churches of the Apostolic Faith, Inc. and Bishop Theroux Barnes (collectively, the National Church) over Smith's position as pastor of a local congregation known as the Emmanuel Temple Church (the Local Church). Smith, along with Lamont Smith, Sandra Smith, Raymond Patterson, and Ora Markey (collectively referred to as the Appellants), appeal the denial of their Verified Motion for Rule to Show Cause, presenting the following restated issues for review:

1. Did the trial court abuse its discretion by dismissing the Appellants' Verified Petition for Rule to Show Cause?

2. Did the trial court commit reversible error by failing to find the National Church in contempt of court?

We affirm.

The Emmanuel Temple Church, Indianapolis and Muncie, Inc.[1] is a group of churches with local congregations in Indianapolis and Muncie, Indiana. The local congregation involved in this dispute, i.e., the Local Church, is located in Indianapolis. The Local Church is independent insofar as it has the authority to select its own leadership, including the pastor. Bishop Ira Smith, Smith's husband, assumed the position of pastor of the Local Church in 1984. On January 11, 2008, Bishop Smith announced from the pulpit that in the event of his death or incapacity, he intended that his wife should succeed him as pastor and his son, Ivan Lamont Smith, should act as assistant pastor. Bishop Smith died on June 10, 2008.

At the time of Bishop Smith's death, the Local Church had a membership of between 20 and 30 active members. There

---

1. In this case, the appellants consistently refer to the appellees as "Emmanuel Temple Pene-costal Churches of the Apostolic Faith, Inc.". *See, e.g., Appellant's Appendix* at 17. Else-where, however, "Penecostal" is spelled more traditionally as "Pentecostal". We will utilize the traditional spelling.

had been no meeting of the Local Church's directors in several years. During that time, all of the decisions were made either by Bishop Smith or by the Local Church's members at congregational meetings. It appears that the Local Church's directors had never formally adopted by-laws, most notably including by-laws that would govern the selection of a pastor. Smith assumed her late husband's duties shortly after his death and began preaching at the Local Church in June 2008. A minority of the Local Church's members objected to Smith's appointment as pastor. They contacted the national governing body (the National Church) of their local congregation and asked for assistance in removing Smith from her role as pastor. National Church leaders visited the Local Church shortly after Bishop Smith's death and challenged Smith's appointment as pastor. On June 27, 2008, the National Church's administrator notified Smith by letter that she was excommunicated from the National Church and therefore was not permitted to serve as pastor of the Local Church. Nevertheless, Smith continued to preach at the Local Church. On September 11, 2008, the National Church sent another letter to the Local Church announcing that it had appointed Bishop Huron Seaton as the new pastor of the Local Church. Shortly thereafter, someone had the locks changed at the Local Church to prevent Smith and others associated with her from entering the church. Smith and others had the locks changed again. They provided keys to the new locks to all existing key-holders.

On September 19, 2008, the National Church filed a Verified Motion for Order to Restrain Entry Upon Land and for Preliminary Injunction, thereby seeking an order forbidding Smith and certain others from entering onto the Local Church's property. The court immediately issued an ex parte temporary restraining order (TRO) and an order to appear at a hearing on preliminary injunctions. After that time, Smith and church members loyal to her worshipped at a Muncie church affiliated with the National Church without interference by the National Church or Local Church members. Smith went to the Local Church on September 24, 2008, in violation of the TRO, and the National Church called the Indianapolis Metropolitan Police Department, which responded to the scene and arrested Smith for violating the TRO. Trespassing charges were subsequently filed against Smith and then dropped. Almost a year later, on August 20, 2009, and following a hearing, the trial court denied the request for preliminary injunction and issued an order (the August 20 Order) restoring Smith and Ivan Lamont Smith as pastors of the Local Church. In the interim, i.e., between the date the TRO was rescinded and the date the request for an injunction was denied, Smith "continued to worship and preach as usual at the Indianapolis church following her excommunication", *Appellants' Brief* at 6, although other members of the congregation and the National Church interrupted worship services and advocated for her removal. It appears that ultimately Smith and several others "continued to preach and worship at the Muncie Church while the underlying lawsuit was pending." *Id.*

Following the August 20 order, the Local Church adopted bylaws concerning the election of pastors. On September 18, 2009, pursuant to the aforementioned bylaws, an election was held for the pastor positions. The members unanimously elected Seaton as pastor and Joseph Morst as assistant pastor. Donna and Lamont Smith were informed that they could continue to worship at the Local Church if they so desired. After the election, Smith attempted to enter the Local Church's building "many times ... during non-wor-

ship hours and when the Church was closed." *Id.* On several occasions, Smith "brought a locksmith with her and they attempted to break into the Church late at night." *Appellants' Appendix* at 68. Police were called and after referring the matter to the prosecutor's office, they advised the Local Church that if Smith attempted thereafter to enter the Local Church facilities after hours, they should summon police. That soon happened and Smith was informed by police at the scene that she would be arrested if she did not leave. After the Local Church installed a security system on September 28, 2009, Smith made no further attempts to enter the Local Church's building.

On March 5, 2010, the Appellants filed a Verified Motion For Rule To Show Cause, contending that the Local Church had violated the court's August 20, 2009 order by refusing to allow Smith to enter the Local Church premises and refusing to restore Smith to her pastoral position. In response, the National Church filed a motion in opposition and a motion to dismiss. After a short hearing, the trial court granted the National Church's motion to dismiss, entering the following findings:

1. That Defendant [Smith] alleges that Plaintiffs [the National Church] have violated the Order of this Court which requires the thereto [sic] Church to allow Defendant to worship at the Church;

2. That as shown by the Affidavit of Church Deacon Richard Zak, and by the Affidavit of Richard N. Boe, along with their supporting documents, the Court finds that all Church Members including Defendant Donna Smith, may worship at posted worship hours as they so desire;

3. That Donna Smith was not denied her right to worship;

4. That Plaintiffs have not violated this Court's Order, and are not in contempt of this Court;

5. That Defendant Smith's motion for contempt is so patently without foundation, and an attempt to harass the Church and the Plaintiffs, that the Court finds that the motion is frivolous and that Plaintiffs are entitled to their attorney fees[2] and costs in this matter.

*Appellant's Appendix* at 57–58 (footnote supplied). Smith filed a motion to correct error, which the trial court denied. Essentially, Smith appeals from the order granting the National Church's motion to dismiss.

1.

Smith contends the trial court committed reversible error by granting the National Church's motion to dismiss her Verified Petition for Rule to Show Cause. By way of reminder, Smith's verified petition sought a finding of contempt against the National Church for violating the trial court's August 20, 2009 order, which provided that the Appellants could continue worshipping at the Local Church if they so desired and that Smith and her son should be restored as pastors at the Local Church.

■■■ As to the underlying claim, the determination of whether a party is in contempt of court is a matter committed to the trial court's discretion. *City of Gary v. Major*, 822 N.E.2d 165 (Ind.2005). The ruling that Smith challenges, however, is the granting of the National Church's motion to dismiss. In ruling upon that motion, the trial court considered matters outside of Smith's verified petition, i.e., the affidavits of Zak and Boe, together with "supporting documents." *Appellants' Appendix* at 57. Because of this, Smith con-

**2.** The court later vacated the award of attor- ney fees.

tends that the trial court erred in failing to convert the National Church's motion to dismiss her verified petition into a motion for summary judgment. This is based upon the provision in Ind. Trial Rule 12(B) that states, "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" By its own terms, however, T.R. 12(B) applies to motions to dismiss "any pleading". According to T.R. 7(A), "pleadings" consist of "(1) a complaint and an answer; (2) a reply to a denominated counterclaim; (3) an answer to a cross-claim; (4) a third-party complaint, if a person not an original party is summoned under the provisions of Rule 14; and (5) a third-party answer." The National Church's motion to dismiss sought dismissal of a petition for a rule to show cause, which is not a "pleading". Smith provides no authority for the proposition that the aforementioned provision in T.R. 12(B) applies to motions to dismiss that are not related to pleadings. In fact, the only case cited by Smith in the relevant portion of her brief, i.e., *Reeder v. Harper*, 788 N.E.2d 1236 (Ind.2003), does not involve a motion to dismiss, but rather a motion for summary judgment. Accordingly, we reject Smith's claim that T.R. 12(B) applies here.[3]

Therefore, the appropriate standard of review is that which applies to the determination of whether a party is in contempt of a court order, i.e., abuse of discretion.

*See City of Gary v. Major*, 822 N.E.2d 165. An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Mitchell v. Mitchell*, 871 N.E.2d 390 (Ind.Ct.App. 2007). "We will affirm unless, after a review of the entire record, we have a firm and definite belief that a mistake has been made by the trial court." *Id.* at 394.

Smith contends the National Church violated the August 20 Order, and thus should be found in contempt of that order, on two grounds. First, she contends the National Church refused to allow her to enter the Local Church's premises, in violation of the provision in the August 20 Order that she "shall be permitted to continue to worship at the Local Church, if they choose to do so." *Appellants' Appendix* at 16. Second, she contends the National Church refused to recognize her as the pastor of the Local Church, in violation of the provision in the August 20 Order that "Donna Smith and Ivan Lamont Smith shall be restored to their pastoral positions." *Id.* at 18.

We begin by briefly discussing the former claim. It appears that Smith's claim in this regard is primarily a challenge to the Local Church's refusal to let her enter into the church after hours. As we will explain below, Smith is not a member of the staff at the Local Church and as such does not have a right to enter the Local Church's building at times other than those designated for public worship. The undisputed evidence shows that Smith

---

3. Even assuming for the sake of argument that Smith is correct, it would have no bearing on the outcome of this case. In *Murphy Breeding Lab., Inc. v. West Cent. Conservancy Dist.*, 828 N.E.2d 923, 926–27 (Ind.Ct.App. 2005), we held that where the trial court afforded the parties a reasonable opportunity to present external material, "the failure to specifically designate a motion as one for summary judgment instead of a dismissal under 12(B)(6) is deemed harmless error." In the instant case, Smith filed a brief and motion in opposition to the National Church's motion to dismiss and thereby had an opportunity to present external material in support of those documents, just as the National Church did.

is welcome to enter the building at times of corporate worship or to attend other activities at which the members of congregation are invited. Thus, there is no merit to this claim.

We turn now to the latter claim, i.e., that the National Church violated the August 20 Order by refusing to recognize her as the Local Church's pastor. As both parties acknowledge, at the time of Bishop Smith's death, the Local Church had no by-laws governing the choice of his successor. Thus, his personal selection of his wife and son as successors was clothed with an air of legitimacy. The trial court essentially confirmed this in the August 20 Order when it directed the National Church and the Local Church to restore her and her son to those positions after the Local Church, with significant involvement of the National Church,[4] had attempted to disregard their selection as somehow illegitimate. The trial court's ruling in that regard was apparently based upon the conclusion that without by-laws to govern the process, Bishop Smith's naming of his successor was not an illegitimate means by which to choose the Local Church's next pastor. Moreover, his choices were apparently affirmed by the congregation in separate votes conducted in June 2008 and July 2008. In September 2008, after Smith's ostensible excommunication from the National Church, a series of confrontations took place between Smith and some members of the Local Church and the National Church whereby the latter parties attempted to prevent Smith from entering the church premises. It is unclear how long after Smith was excommunicated on June 27, 2008 that she continued to preach at the Local Church, but it appears that it lasted until, or nearly until, September of that year when the aforementioned series of confrontations ensued.

 After the National Church filed its Verified Motion for Order to Restrain Entry Upon Land and for Preliminary Injunction, Smith and certain Local Church members loyal to her began worshipping at a church in Muncie. Things remained thus until the court issued its August 20 Order. It appears that following the August 20 Order, Smith and her followers did not immediately return to the Local Church, but instead continued to worship in a Muncie church. As for the Local Church, however, soon after the August 20 Order was issued, it set in motion procedures to select a new pastor, i.e., someone other than Smith. On September 8, it mailed notice to its members, including Smith, that it would hold an election on September 18 to elect a pastor. On September 13, 2009, the Local Church's board met and voted not to retain Smith as pastor of the Local Church. On September 16, the Local Church's board met and approved by-laws governing the selection of pastor. As indicated previously, Smith and her followers had been notified of the election but declined to attend. Nevertheless, Smith was listed on the ballot as a candidate for the position of pastor. Pursuant to the procedures approved on September 16, the election was held on September 18, 2009 and Seaton was elected as pastor and Joseph Morst was elected as assistant pastor.

After the September 18 election, Seaton was the duly elected pastor of the Local Church. This represented a fundamental change in the factual circumstances upon which the trial court based its August 20 Order. Before September 18, 2009, Smith was the duly elected pastor of the Local

4. The National Church's attorney conceded at the hearing on Smith's motion that the National Church had no right (he referred to it as "standing", *Appellee's Brief* at 23) to get involved in the selection of the Local Church's pastor in the summer and fall of 2008.

Church, as she had been selected to serve in that capacity by her husband and confirmed by two separate votes of the church's members. Smith contends, however, that the election of Pastor Seaton was illegitimate and itself in violation of the August 20 Order. This argument is primarily premised upon the contention that the National Church "did not have standing to interfere with the operations of the Local Church." *Appellants' Brief* at 11. This refers to the facts that the National Church played a role (1) in initially opposing Smith's selection as pastor, (2) in naming Seaton as the Local Church's pastor pending the resolution of the original dispute in the August 20 Order, and (3) in participating in the process of adopting new guidelines and conducting the September 18 election of Pastor Seaton.

It seems clear that the "standing" to which Smith refers is something other than the legal doctrine of standing, i.e., "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Black's Law Dictionary* 1413 (7th ed.1999). Rather than challenge the National Church's right to make a legal claim in the instant action, it appears that Smith instead challenges the National Church's right to interfere or participate in the Local Church's affairs, and most specifically its selection of a pastor.

In support of this contention, Smith cites but a single case, i.e., *Cole v. Holt,* 725 N.E.2d 145 (Ind.Ct.App.2000), *trans. denied.* In *Cole,* a church board of trustees fired its minister, but did so without consulting or receiving the approval of the members of the congregation. That minister refused to recognize the validity of the board's action. A short time later, the congregation met and voted a new board of trustees into power. Thereafter, the old board, acting in the name of the church, sought a preliminary injunction and permanent restraining order against the minister. The minister filed a motion for judgment on the evidence, which the trial court granted. Among other things, the court held that the board had no authority to file a lawsuit on behalf of the church.

With the congregation's approval, the church thereafter became incorporated under the laws of Indiana. Subsequently, the church took steps to place the church property into the name of the corporation by quitclaim deeds. Some of the property had previously been held in the name of the former trustees in their capacity as trustees. Also, the incorporated church entered into a new service contract with the minister, providing that the minister could be terminated only by a majority vote of the congregation. These by-laws were ratified by a majority vote. At some point thereafter, the former trustees defeated attempts by congregation members to remove items of personal property by changing the door locks. Each time, the police were called and refused to allow any removal of property without a court order.

After the memberships of the former trustees were withdrawn, they filed a complaint seeking eviction of the minister from the property. The minister filed a motion challenging the authority of the former trustees to file an action on the church's behalf. Ultimately, the trial court dismissed the trustees' claims, finding they had no authority to bring the claims and the trustees appealed. We affirmed, holding, "when presented with a dispute within a church of congregational polity, our courts will uphold the majority's decision, whether that is to purchase property or even remove the minister, unless the church has established its own decision-making body with the power to override the will of the majority." *Id.* at 148. Citing this holding, Smith contends that she was the choice of a majority of the mem-

bers of Local Church before the National Church inserted itself into the process and eventually succeeded in divesting Smith of the pastorship. Therefore, according to Smith, the National Church's involvement violated *Cole*.

To the contrary, the trial court was guided by *Cole* in ruling as it did. In the instant case, there were three separate elections. The first two resulted in Smith's confirmation as pastor. It is the results of those elections that the trial court's August 20 Order was fashioned to uphold. After that, however, another election was held, this one resulting in Seaton's selection as pastor. Pursuant to *Cole*, the trial court enforced the election of Seaton as pastor because the evidence indicated that he was chosen by a majority of the congregation who opted to attend the meeting and vote. We understand that Smith essentially is assailing the procedures by which Seaton was selected, ostensibly because they involved members of the National Church. Smith points to no authority, however, that would support this court delving into the church's internal affairs to the extent necessary to invalidate the election of a pastor by the congregation. Indeed, *Cole* counsels to the contrary.

▪ As we observed in *Cole*, "[c]ivil courts are precluded from resolving disputes involving church affairs if resolution of the disputes cannot be made without extensive inquiry into religious law and polity." *Id.* In this case, Smith's appellate contentions implicate the relationship between a national church and one of its affiliate member congregations. Moreover, it appears that although in some ways the National Church and the Local Church stand in relation to one another as the descriptive labels we have attached to them would suggest, in other ways the Local Church is antonymous and thus independent of the National Church's oversight. Neither party has at any point presented evidence indicating that the vote for a pastor must occur or can only occur at prescribed intervals. Thus, there appears to be no evidence that the vote conducted in September 2009 was improper in that respect. It also appears to be undisputed that Smith and her followers were invited to worship at the church and were apprised of the September 2009 election for pastor before it was held. Further, and perhaps most importantly, it is undisputed that the Local Church passed by-laws governing the September 2009 election and that the election was conducted pursuant to those by-laws. As Smith concedes [5], the structure of the Emmanuel Temple Pentecostal Churches of the Apostolic Faith, Inc. allocates to its local congregations the right to select their own pastors, presumably including the right to pass by-laws governing that procedure. Our courts will not inquire into those procedures except to the extent indicated in *Cole*, i.e., to ensure that the majority's decision is upheld. As explained above, at the September 18 election, a majority of the Local Church's congregation elected Seaton as pastor. The trial court did not abuse its discretion in, in essence, affirm-

---

5. At the May 7, 2010 hearing on the National Church's motion to dismiss, the following colloquy occurred between the court and Smith's counsel:

> [Counsel]: Your Honor, if I may, Miss Smith was never restored to her position. They filed a notice of appeal. Then they withdrew it. If they wanted to overturn your order of August 20th, that should have been done through the appellate process. They didn't do so.
> THE COURT: Well, I disagree. I think that there is a proper meeting, a proper notice [of election] and a meeting was called, I think they had every right to do that.
> [Counsel]: *I agree.*

*Appellee's Appendix* at 20 (emphasis supplied).

ing that decision by dismissing Smith's petition.

### 2.

Smith contends the trial court committed reversible error by refusing to find the National Church in contempt of court. Success on this issue was premised upon Smith prevailing upon the first issue, i.e., our determining that the National Church violated the August 20 Order by dismissing Smith and electing Seaton as pastor. Having determined that Seaton's election as pastor did not constitute a violation of the August 20 Order, we necessarily reject the argument that the National Church should be found in contempt thereof.

Judgment affirmed.

MAY, J., and MATHIAS, J., concur.